STATE OF WEST VIRGINIA

*v.*

JAMES MARK DEMASTUS

(No. 13862)

Decided September 23, 1980.

*Jeniver J. Jones, William C. Garrett, William C. Martin,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *E. Wayne Basconi,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

In the early morning hours of Saturday, June 21, 1975, then fifty-two year old Paul Hauman was badly beaten and allegedly robbed as he walked through an alley to his mother's home in Glenville, West Virginia after attending an all-night session of the Gilmer County Folk Festival.

On July 7, 1975, James Mark Demastus was indicted for robbing Hauman,[1] was arraigned July 9, and his trial

---

[1] If "robbery" is committed in the manner described in the first sentence of paragraph one of W. Va. *Code,* 61-2-12, it is commonly referred to as "armed robbery", a misnomer. *See State ex rel. Vandal v. Adams,* 145 W.Va. 566, 115 S.E.2d 489 (1960).

The first paragraph of W. Va. *Code,* 61-2-12, is:

If any person commit, or attempt to commit, *robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person,* or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatso-

began five days later. He was an indigent and lawyers William C. Garrett of Webster Springs, Webster County, and Jeniver J. Jones of Sutton, Braxton County, were appointed about July 2 and 7, respectively, to represent him.

They objected to the July 14 trial date and moved for a continuance because their case could not be prepared by then. Neither resided nor had his law practice in Gilmer County. Jones was preparing for a murder trial in Clay County.[2] The crime focused adverse publicity on the festival, and they also wanted more time to get evidence to support a motion for change of venue. Demastus' history of mental problems prompted them to move for pretrial psychiatric evaluation. All three motions were denied and their client then pled not guilty, jurors were selected, and trial began.

Demastus and Hauman testified that at about 3:30 A.M. on June 21, they were sitting in front of the Score Board Tavern listening to music. The two exchanged minor conversation, and Demastus gave Hauman two beers and Hauman lit several of defendant's cigarettes. Other witnesses, for the prosecution and defense, substantially corroborated that defendant and Hauman were sitting together for a time from 3:30 A.M. and shortly thereafter. It is also uncontroverted that about 4:00 A.M. both left the immediate tavern area, not together, but in the same direction.

---

ever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years. If any person commit, or attempt to commit, a robbery in any other mode or by any other means, except as provided for in the succeeding paragraph of this section, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than five nor more than eighteen years. (Emphasis added.)

[2] Jones, in his opening statement, said: "*I am sorry to say we haven't had sufficient time to check out our witnesses to see what they are going to say*, but the defendant has entered a plea of not guilty and it's incumbent upon the State of West Virginia to prove him guilty, beyond a reasonable doubt." (Emphasis added.)

Demastus did not know to where or when Hauman left. Demastus tried to find companions of the earlier evening, but after several minutes gave up the search only to see another friend, Glenn Waugh, in an automobile leaving town, and he asked for a ride home. Waugh testified that Demastus entered his car sometime around 4:15 A.M., was "drunk", and "passed out" on the way home.

Hauman said he left the company of defendant and walked toward his mother's home through an alley past the house of Mary Bland Whiting, and behind the Baptist Church, where he was attacked from behind and "somebody beat the hell out of me."

Mary Bland Whiting was getting ready for bed about 4:00 A.M. when she heard a fight in the alley. Her view was somewhat obscured by a hedge, but she recognized Hauman's voice and could see enough of his attacker to describe him as having light-colored shoulder-length hair and being of medium build. She called the Glenville Police.

Dallas Goodrich, a Glenville policeman, testified he received a call between 4:15 and 4:30 A.M. about a fight behind the Baptist Church, went immediately to the scene and saw Hauman bleeding and very excited, holding his wallet. Hauman blurted out "somebody beat the hell out of me and I think he robbed me," and described his assailant as being burly with longish light-colored hair. He did not identify him as the man whose presence he had just left. Goodrich checked the area but saw no one.

Trooper K. Smith of the West Virginia State Police, investigating the crime, telephoned Hauman at his Clarksburg residence that afternoon. Hauman told him that the man who attacked him was the man with whom he had been sitting earlier that day. The following Tuesday, Hauman learned Demastus' name through a photographic identification.

The jury was instructed that it could find verdicts of (1) armed robbery, (2) unarmed robbery, (3) unlawful wounding, (4) assault and battery, (5) petit larceny, or (6) not guilty. It found Demastus guilty of unlawful wounding.

His motions to set aside the verdict and for a new trial were overruled; he was sentenced to imprisonment for one to five years. Only then did the court order his medical records from Weston State Hospital be put in the record as an exhibit supporting his motion for pretrial psychiatric examination.

## I.

The Constitutions of this state and the United States guarantee a defendant a reasonable time to prepare for trial,[3] and guarantee effective assistance of counsel. These rights were denied defendant.

In West Virginia, this reasonable time to prepare is to be considered when deciding if defendant received effective assistance of counsel as guaranteed by both our state and federal constitutions; and is also an indepen-

[3] Art. III, §14, of the Constitution of the State of West Virginia, reads as follows:

Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, *and a reasonable time to prepare for his defence*; and there shall be awarded to him compulsory process for obtaining witnesses in his favor. (Emphasis added.)

We find no counterpart for this guarantee in the federal constitution, but believe it to be substantially related to a claim of ineffective assistance of counsel. *Wilhelm v. Whyte, supra,* 239 S.E.2d, at 740, citing, *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). *See also, Skinner v. Louisiana,* 393 U.S. 473, 89 S.Ct. 704, 21 L.Ed 2d 684 (1968) (dissenting opinion, Marshall, J.): "[a] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id.,* at 476, 89 S.Ct., at 706.

dent state constitutional guarantee. *Wilhelm v. Whyte*, 161 W.Va. 67, 239 S.E.2d 735, 740 (1977).[4]

There is no rigid rule by which to determine what a "reasonable" time to prepare a defense is, nor one that always can be relied upon to assess counsel effectiveness. However, cases here and elsewhere discuss the problems.[5]

In *Housden v. Leverette*, 161 W.Va. 324, 241 S.E.2d 810, 811 (1978), we adopted the well-established Fourth Circuit rule that appointment of counsel within one day or less of trial or entry of a guilty plea, raises a rebuttable presumption that a defendant was denied effective counsel.[6] We neither limit nor extend that rule, but cite

---

[4] N.B.: "We do not find this language to be applicable where the issue is the claim of the absence of a material witness rather than a claim of the lack of a reasonable time to prepare the defense." *Id.*

[5] *See, State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539 (1979) (a weekend was insufficient time to prepare); *Housden v. Leverette*, 161 W.Va. 324, 241 S.E.2d 810 (1978) (one day was insufficient; raised presumption of ineffective assistance that went unrebutted); *State ex rel. West Virginia-Pittsburgh Coal Co. v. Eno*, 135 W.Va. 473, 63 S.E.2d 845 (1951) (one day was insufficient time to prepare); *State v. Lane*, 44 W.Va. 730, 29 S.E. 1020 (1898) (one day was sufficient when defendant had preceding four months to retain counsel); *State v. Maier*, 36 W.Va. 757, 15 S.E. 991 (1892) (five days was sufficient in light of the defense made). *See also, State v. Moore*, 39 N.C. App. 643, 251 S.E.2d 647 (1979) (seventeen days was not sufficient time to prepare); *State v. Harris*, 290 N.C. 681, 228 S.E.2d 437 (1976) (no set period of time; seven weeks was sufficient time); and in federal court: *Mackenna v. Ellis*, 263 F.2d 35 (5th Cir. 1959), *cert. denied*, 360 U.S. 935, 79 S.Ct. 1453, 3 L.Ed.2d 1546 (1959) (two days was too short a time to prepare); *United States v. Bergamo*, 154 F.2d 31 (3rd Cir. 1946) (three weeks was insufficient time to prepare).

The duty to provide counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65 (1932).

[6] Citing, among others, *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974), 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974); *Garland v. Cox*, 472 F.2d 875 (4th Cir. 1973), *cert. denied*, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973); *Fields v. Peyton*, 375 F.2d 624 (4th Cir. 1967); *Twiford v. Peyton*, 372 F.2d 670 (4th Cir. 1967); recognizing that several circuits have declined to follow this rule: *Rastrom v. Rob-*

it to show the interrelation this Court sees between the amount of time an attorney is given to prepare for trial and his ability to render effective assistance.[7]

Criminal defense work is significantly more complex than it was just a few years ago. *State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314 (1976). Our standards for effective legal representation have become more exacting, thereby subjecting the conduct of criminal defense lawyers to greater scrutiny. *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974). It is obvious "there is a substantial relationship between time to prepare for a criminal trial and the quality of representation provided by the defense." *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539, 542 (1979).

Trial court decisions about continuances have not been disturbed unless discretion was abused. *State v. Jones,* 84 W.Va. 85, 99 S.E. 271 (1919), Syllabus Point 1; *State v. Bush, supra,* at Syllabus Point 2. The decision must have prejudiced the party who asked for the continuance. *State v. Jones, supra,* at Syllabus Point 3.

In *State v. Bush, supra,* we decided that a trial court's failure to grant a continuance to newly appointed counsel may deny a defendant effective counsel. Defendant's attorney had only a weekend to prepare for trial. *Id.,* at 540-541. The case is important because it attempts to

bins, 440 F.2d 1251 (1st Cir. 1971), *cert. denied,* 404 U.S. 863 (1971); *U.S. v. Wight,* 176 F.2d 376 (2nd Cir. 1949), *cert. denied,* 338 U.S. 950 (1950); *Moore v. U.S.,* 432 F.2d 730 (3rd Cir. 1970) (en banc); *Mosley v. Dutton,* 367 F.2d 913 (5th Cir. 1966), *cert. denied,* 387 U.S. 942 (1967); *Callahan v. Russell,* 423 F.2d 450 (6th Cir. 1970); *Wolfs v. Britton,* 509 F.2d 304 (8th Cir. 1975).

The United States Supreme Court has refused to adopt a *per se* rule requiring a reversal following every tardy appointment of counsel, reasoning that the relevant inquiry is the prejudice caused by the late appointment rather than the time of appointment. *Chambers v. Maroney,* 399 U.S. 42, 54 (1970).

[7] Syllabus Point 2, *State ex rel. West Virginia-Pittsburgh Coal Co., v. Eno,* 135 W.Va. 473, 63 S.E.2d 845 (1951): "The right guaranteed by State and Federal Constitutions to a person charged with a criminal violation to have effective assistance of counsel, cannot be abrogated by denying counsel, if timely employed, sufficient time to adequately prepare for trial."

describe objective factors by which a judge may assess claims of inadequate time to prepare for trial.[8]

> [T]he time available for preparation, the likelihood of prejudice from the denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, the availability of discovery from the prosecution, the adequacy of the defense provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused for the alleged crime, any representation of the defendant by other attorneys that accrues to his benefit, whether the plea for more time to prepare for trial is made in good faith, the public interest in a speedy trial of the case, and the time the defendant has been in prison awaiting trial.
>
> *State v. Bush, supra,*
> at Syllabus Point 4.

Twelve and seven days for two lawyers to prepare for a felony trial may be sufficient in some circumstances, but not these. They asked for a continuance to prepare for trial and investigate facts to support motions for change of venue and psychiatric evaluation. We consider

---

[8] The federal Fifth Circuit has written extensively about the matter. *See,* e.g., *United States v. Gidley,* 527 F.2d 1345 (5th Cir. 1976) (quantum of time available for preparation); *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974), *cert. granted,* 421 U.S. 1010 (1975) (likelihood of prejudice from denial); *United States v. Sahley,* 526 F.2d 913 (5th Cir. 1976) (accused's role in shortening the effective preparation time); *United States v. Long,* 419 F.2d 91 (5th Cir. 1969) (complexity of the case); *United States v. Hamilton,* 492 F.2d 1110 (5th Cir. 1974) (availability of discovery from the prosecution); *United States v. Simpson,* 460 F.2d 1321 (5th Cir. 1972) (adequacy of defense provided at trial); *Bowman v. United States,* 409 F.2d 225 (5th Cir. 1969), *cert. denied,* 398 U.S. 967 (1970) (skill and experience of the attorney); and *Weaver v. State of Texas,* 474 F.2d 1135 (5th Cir. 1973), *cert. denied,* 414 U.S. 1064 (1973) (any pre-appointment or pre-retention experience of counsel with the accused or the alleged crime).

*See also, United States v. Uptain,* 531 F.2d 1281, 1286-87 (5th Cir. 1976); and *United States v. Maxey,* 498 F.2d 474 (2nd Cir. 1974) (both are briefly discussed in *Bush, supra,* at 545).

it error "to refuse a continuance to allow a defendant to obtain evidence which is critical to his defense, the existence of which was discovered only shortly before trial." *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433, 440 (1976), citing *State v. Skinner*, 101 W.Va. 632, 133 S.E. 371 (1926). A judge should grant a continuance if only to give defendant time to obtain his medical records about his mental illness, the probative value of which was recognized in *State v. Myers*, 159 W.Va. 353, 222 S.E.2d 300 (1976).

Also, one of the lawyers was preparing for a murder trial in another county, and a trial judge must consider a lawyer's other commitments when granting or denying a continuance.

Their defense had to be severely limited because without proper medical evaluation, they could not even plead that Demastus was insane. As Jones said:

> If the Court please, if we would enter a plea of insanity now we would not have adequate time for the preparation of the matter to be heard. And secondly, we would not have the benefit of a second opinion of some psychiatrist's evaluation, which would be necessary before we proceed on a trial of insanity.

Prejudice to defendant by the rush to trial was an indelible taint on these proceedings.

## II.

Whenever a trial court knows that a criminal defendant has a recent history of mental illness, it is an abuse of its discretion not to afford him or her an opportunity for psychiatric evaluation. To the extent that *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975), is inconsistent with this rule, it is overruled.[9]

---

[9] In *Arnold*, the circuit court denied defendant's motion for a pretrial psychiatric examination, made by counsel based on defendant's assertion to him that he had been hospitalized in twenty-six different locations on twenty-seven different occasions. We affirmed, stating that, aside from the demeanor of the defendant,

This judge knew about defendant's history of mental illness, and should have at least allowed inquiry into the matter.[10]

There are no "fixed or immutable signs" always dispositive of a defendant's competency to be tried.[11] We have long held that a person cannot be tried, sentenced or punished while mentally incapacitated. *State v. Harrison*, 36 W.Va. 729, 15 S.E. 982 (1892). *See also, Bishop v. United States*, 350 U.S. 961 (1956). Furthermore, adequate state procedures must exist to make certain that a legally incompetent accused is not convicted. *See, Pate*

---

there was no corroboration of counsel's allegation — therefore, no abuse of discretion. If a judge believes that the allegations made by a defendant's counsel are made in good faith, we would now require further inquiry into the competency of defendant to stand trial or into his or her criminal responsibility.

A trial judge has authority by W. Va. *Code*, 27-6A-1(a):

> Whenever a court of record believes that a defendant in a felony case or a defendant in a misdemeanor case in which an indictment has been returned may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist.

A judge may be made aware of a possible problem with defendant's competency by such factors as: a lawyer's representation concerning the competence of his client; a history of mental illness or behavioral abnormalities; previous confinement for mental disturbance; documented proof of mental disturbance; evidence of irrational behavior; demeanor observed by the judge; and, psychiatric and lay testimony about competency. *State v. Arnold, supra* 219 S.E.2d, at 926, citing: *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966). These factors are restated in *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976).

[10] Overruling defendant's motion for psychiatric evaluation, he said:

> THE COURT: The court being of the opinion that the psychiatric evaluation made heretofore by Weston and Spencer have not been of any help in any way in telling if the defendant is ready to appear, or to stand trial. The motion is accordingly overruled.

[11] *See, Drope v. Missouri, supra* n. 13, 420 U.S., at 180 (1975).

*v. Robinson, supra* n. 13, 383 U.S., at 386 (1966); *Martin v. Estelle*, 492 F.2d 1120 (5th Cir. 1974).

A criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts. *State ex rel. Walton v. Casey*, 163 W. Va. 208, 258 S.E.2d 114 (1979), Syllabus Point 1.

When circumstances require consideration of information available only in a pretrial psychiatric evaluation, that examination must be given.

### III.

Defendant objected to the possible verdicts of armed robbery, unarmed robbery, and petit larceny offered to the jury.

This is a test a trial court should use to decide a defendant's motion for directed verdict:

Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; *the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.* (Emphasis ours.) *State v. West*, 153 W.Va. 325, 333-334, 168 S.E.2d 716, 721 (1969).[12]

---

[12] For a discussion of this standard: *See, State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219, 221 (1978), rephrasing the test as:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground

A "substantial evidence" determination should also be made to decide upon possible verdicts. *See, State v. Ferguson,* ____ W.Va. ____, 270 S.E.2d 166 (1980); *see also, Gaines v. Leverette,* ____ W.Va. ____, 266 S.E.2d 451 (1980).

We find no substantial evidence upon which a jury might find Demastus guilty of any robbery-related offense because the state failed to show that any theft had taken place. Hauman could not testify that he had been robbed, and there were no other facts that could have allowed a jury to find defendant guilty beyond a reasonable doubt of such acts.[13] Offering the jury robbery and larceny verdicts gave it a plethora of opportunities for a compromise verdict, reached from points of departure not supported by any evidence.

## IV.

Defendant contends that his in-court identification by Hauman was based on an impermissibly suggestive pretrial photographic viewing that furnished a substantial likelihood for misidentification.

Hauman's in-court identification was reliable because he had been physically close to Demastus — even lighting cigarettes for him minutes before the attack. Although he was attacked from behind and knocked unconscious, he did not go without a struggle, and afterward gave the police, even though he was dazed, an

---

of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

In *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976), we found no evidence which would have supported a state instruction on larceny. However, because it did not appear the jury was misled by this instruction (the jury returned a verdict of petit larceny) or that the defendant was prejudiced thereby, the error was not reversible. *See also, State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978).

[13] The State asked Hauman:

Q. Tell the jury, if you know, if you don't know also tell the jury, what happened to the money you had in your wallet?

A. I don't know what happened to the money I had in my wallet. I have no idea.

accurate description of his assailant corroborated by another witness. It is difficult not to notice someone's features while lighting his or her cigarette.

The photographic identification procedure was three days after the crime, after Hauman told police he had been sitting with the man who attacked him. He looked at several photographs at his leisure with no prompting by the police. When he identified Demastus to have been his assailant, he did so with certainty.

Defendant received, as he was entitled, an *in camera* hearing on the admissibility of the pending in-court identification. *State v. Watson*, ___ W.Va. ___, 264 S.E.2d 628 (1980); *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 277 (1978). In *Watson*, we concluded that if a defendant questions identification procedures, a trial court should apply the test in *State v. Williams*, 162 W.Va. 348, 249 S.E.2d 752 (1978), Syllabus Point 1:

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Williams'* test is the progeny of decisions both in the United States Supreme Court and this Court. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Kennedy*, 162 W. Va. 244, 249 S.E.2d 188 (1978); *State v. Casdorph*, 159 W. Va. 909, 230 S.E.2d 476 (1976). *See also*, Manson v. Braithwaite, 432 U.S. 98 (1977).

We find no error in this process, and agree with the trial court's refusal to suppress the in-court identification.

## V.

When the judge called a panel of twenty prospective jurors, he made these remarks:

> Ladies and gentlemen of the jury, this is a case wherein the State of West Virginia is the plaintiff and James Mark Demastus is the defendant. It is charged by the state that in the month of June, 1975, that the defendant James Mark Demastus, did make an assault, feloniously, upon one Paul Hauman and that by making this attack he did then and there put Paul Hauman in bodily fear and while he was in such bodily fear, that he took certain property, goods and lawful currency of the United States of America of the sum of $40.00 that was the possession of Paul Hauman and lawfully in his control, and he took it against his will and he took it with violence, which we commonly refer to as armed robbery. *Now, that is all the facts that the court has before it in regard to this matter. It is necessary that you know at least the bare facts of the case,* because the court must now make certain inquiry of you testing your qualifications to sit as jurors on this trial and likewise certain inquiry might be made by the Prosecuting Attorney and attorneys for the defendant. (Trial Court Record, pp. 13-14.) (Emphasis added.)

Use of the word "facts" was unfortunate because a judge should refrain from making statements that could influence a jury or prejudice a litigant. However, we will not magnify a remark to prejudicial error if it had little importance in its context. *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40, 44 (1976).

This jury was reminded throughout the trial that the indictment was not evidence. We especially note part of the court's charge:

> The Court instructs the jury that the indictment in this case is not to be considered by the jury in the slightest degree indicative of the guilt of the accused and while the jury has the

right to take the indictment to your room, yet you shall not consider the indictment as being any evidence whatsoever of the guilt of the accused and the indictment shall not be considered by you as having any weight whatever as evidence against the accused in this case.

## VI.

Defendant contends it was error to give an instruction about possible verdicts that allowed a verdict of unlawful wounding, not a lesser included offense in an indictment for armed robbery. Therefore, he was denied his constitutional right to know the nature of the accusation against him.

Demastus did not object to the instruction on unlawful wounding; and may not assign it as error. *State v. Bush*, 163 W.Va. 168, 255 S.E.2d 539, 547 (1979). *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433, 441 (1976); *cf., State ex rel. Morris v. Mills*, 157 W.Va. 674, 203 S.E.2d 362 (1974); *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974).

We notice plain error if it is necessary to prevent manifest injustice or clear prejudice to a party, *State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979); but unlawful wounding is a lesser included offense in armed robbery, and defendant had sufficient notice that he was accused of wounding Hauman.[14]

## VII.

Defendant's final assignment — that the trial court should not have refused to give his tenth instruction[15] —

---

[14] *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975), defined lesser included offenses and its Syllabus Point 6 was that joyriding was not a lesser offense included in grand larceny of an automobile. That point was overruled in *State ex rel. D. D. H. v. Dostert*, ____ W.Va. ____, 269 S.E.2d 401 (1980).

[15] Defendant's Instruction No. 10 was:

The Court instructs the jury that intent to commit the alleged crime in question is one of the necessary elements to constitute the alleged crime; and unless you believe beyond a

— fails. It was repetitive, because the jury, by another instruction[16] was informed (although in excess) about intent as an element of each crime with which he was charged.

It is not error for a court to refuse to give a repetitive instruction. *Cf.*, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966); *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966).

We therefore reverse the conviction and remand for a new trial.

*Reversed and remanded.*

---

reasonable doubt that the Defendant intended to commit the alleged crime as charged in the indictment, then you shall find the Defendant not guilty.

[16] State's Instruction No. 10 set more crimes than the evidence supported, but explained about unlawful wounding:

[T]he crime of unlawful wounding is bodily injury done to a person with intent to maim, disfigure, disable or kill and is a felony punishable in the discretion of the Court by either confinement in the State Penitentiary for a term of not less than one (1) nor more than five (5) years or confinement in the County Jail for a term not exceeding twelve (12) months or a fine not exceeding Five Hundred Dollars ($500.00) or both. . . .