457 S.E.2d 801

**STATE of West Virginia, Plaintiff
below, Appellee,**

v.

**Samuel Martin MOORE, Defendant
below, Appellant.**

No. 22347.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 1995.

Decided March 24, 1995.

[redacted]

Mary B. McLaughlin, Asst. Atty. Gen., Charleston, for appellee.

Patrick E. McFarland, Hague & McFarland, Parkersburg, for appellant.

NEELY, Chief Justice.

Samuel Martin Moore appeals from his 16 November 1993 conviction before the Circuit Court of Wood County of one count of sexual abuse in the first degree and one count of burglary. In January, 1994, Mr. Moore was sentenced to the penitentiary for one to five years for first degree sexual abuse, and one

to fifteen for burglary. Mr. Moore assigns a number of errors relating to his court ordered competency evaluation; the admission of his confession; the sufficiency of the evidence proving that Mr. Moore engaged in sexual contact; and other matters allegedly violative of his rights to due process and a fair trial.[1] After examining the record, we conclude that the trial court committed no reversible error, and we affirm Mr. Moore's conviction.

Mr. Moore is thirty-one years old with an eighth grade education and he has been diagnosed as mildly retarded.[2] On 18 August 1992, Maude Gay Matherly hired Mr. Moore to mow her lawn for fifteen dollars. Ms. Matherly is a single working mother raising two sons, Robbie, age ten, and Justin, age eight. Upon discovering that Mr. Moore was cutting the grass with a sickle, she told him someone else would mow the lawn, and sent Mr. Moore away after paying him five dollars.

Mr. Moore returned to Ms. Matherly's house at ten o'clock that night. Ms. Matherly was in the bathtub when he arrived and the children answered the door. At that time, the boys told Mr. Moore to "just go away, that [they] didn't need him." (Tr. 52) Mr. Moore once again left the Matherly residence.

At approximately three o'clock in the morning, 22 August 1992, Ms. Matherly and her sons were awakened by an intruder in their house. According to Mr. Moore's confession, he decided to return to the Matherly's house intending to "go inside, screw [Ms. Matherly,] and leave". (Tr. 148) He broke the windowpane out of a side door, reached in, unlocked the door and entered the two story house. While he was downstairs, he stole money from Ms. Matherly's purse, went into the kitchen and took an apple and a meat fork, and then he undressed and went upstairs.

Naked, Mr. Moore walked into the room where both boys were sleeping together in a double bed. Mr. Moore then lay on top of Robbie, who was lying face down, uncovered and wearing undershorts and red gym shorts. Mr. Moore began moving back and forth apparently attempting to engage in anal intercourse with the sleeping child.

Robbie woke up and started to cry, awakening his older brother Justin. Justin testified that he recognized Mr. Moore by the light of the bedroom window. He saw Mr. Moore attempting to restrain Robbie by holding him by the shoulders. Robbie managed to slide from underneath Mr. Matherly and ran to his mother's room, leaving his brother Justin alone in the room with Mr. Moore. Meanwhile, Mr. Moore spit on Justin's leg, got off of the bed and started toward the stairs. Justin also testified that he saw Mr. Moore walking down the stairs, naked, with an erection.

Robbie shook his mother awake and told her someone was in the house. When a shadowy figure appeared in the hallway, Ms. Matherly got out of the bed and told him she had a gun. The intruder continued past her room and down the stairs. Upon hearing shuffling sounds downstairs, Ms. Matherly dialed 911 and reported an intruder in her home. Neither Robbie nor Ms. Matherly was able to see the intruder's face.

Mr. Moore picked up his pants from downstairs, put them on without bothering to zip them, and went outside. Mr. Moore was sitting on the corner, shirtless, putting his

---

1. The defendant's final catchall assignment of cumulative error includes that the trial court erred: (1) in permitting the admission of evidence that he refused to give a tape recorded confession to the police; (2) in admitting prejudicial hearsay evidence; (3) in allowing Ms. Matherly and her children to refer to the defendant as "Weird George"; (4) in permitting improper testimony by Ms. Matherly that even before the incident she was afraid of the defendant; (5) in allowing conduct and statements by the prosecutor intended to inflame the passion of the jury. Mr. Moore alleges that the cumulative effect of these errors denied him a fair trial and violated his right to due process of law. Because we find no merit in this assignment of error, we limit our review to the assignments addressed in the text of the opinion.

2. According to Appellant's brief, Mr. Moore's school records diagnosed him as "severely retarded but trainable". (Appellant's brief at 7.) However, in March 1993, the psychologist who conducted Mr. Moore's competency evaluation concluded that he was mildly retarded.

shoes and socks on when an officer stopped him approximately 150 feet from the house. Later, the officer went upstairs where he found Ms. Matherly and her sons. When the Matherlys went outside, Justin identified Mr. Moore as the intruder.

Investigating officers arriving on the scene discovered where glass had been knocked out of the side door, the kitchen cabinets had been ransacked and they found a pair of men's underwear and a t-shirt lying inside the house at the top of the stairs. They also found a barbecue fork and an apple lying on the floor in the boy's room and they discovered that sixty dollars had been stolen from Ms. Matherly's wallet. Mr. Moore's wallet was lying on the living room floor.

Mr. Moore was taken to police headquarters and advised of his *Miranda* rights by Detective Bradley. In addition to being orally informed of the *Miranda* rights, the detective placed a written copy on the table in front of Mr. Moore, and the officer pointed to each line as he read it aloud to the defendant. Mr. Moore indicated that he understood his rights and signed and dated the waiver of rights form. Detective Bradley then asked Mr. Moore if he wanted to discuss what had happened that night. Mr. Moore indicated he was willing to talk and proceeded orally to confess. Mr. Moore subsequently refused to give a recorded statement. Mr. Moore asserts that he was intoxicated when he confessed. Detective Bradley does not recall Mr. Moore's physical or emotional state during his confession, and he was unaware of the defendant's retardation at the time of questioning.

## I.

Mr. Moore asserts that the trial court erred when it ordered Mr. Moore's competency evaluation to be conducted by only one psychologist rather than by one or more psychiatrists, or by one psychiatrist and one psychologist, pursuant to *W.Va.Code,* 27–6A–1 [1983]. *West Virginia Code,* 27–6A–1 states in pertinent part:

(a) Whenever a court of record, ... believes that a defendant in a felony case or a defendant in a misdemeanor case in which an indictment has been returned, or a warrant or summons issued, may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it *may* at any stage of the proceedings after the return of an indictment or the issuance of a warrant or summons against the defendant, *order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist....* [Emphasis added.]

Mr. Moore's lawyer made a Motion for Mental Status Examination asking the court to provide a psychiatric examination to determine whether Mr. Moore was competent to stand trial, and to determine whether Mr. Moore was criminally responsible at the time of the alleged offense. The trial court granted the defense motion, but ordered a *psychological* examination of the defendant, instead of a psychiatric examination.

The lawyer for the *prosecution* then suggested that *W.Va.Code,* 27–6A–1 [1983] states that a psychiatric, not a psychological examination is required. However, the court concluded that the language of the statute was discretionary on this issue, and proceeded to order the psychological examination. Despite the prosecution's concern about using a psychologist rather than a psychiatrist to examine Mr. Moore, the defense expressly stated that it had no objection to the court's decision. Nonetheless, the court stated: "[i]f it gets to the point where the Defendant needs and wants, for a witness, a psychiatrist on the ground that he may have more impact on a jury than a psychologist, we will reach that then...." (Tr. 6)

The psychologist's report concluded that Mr. Moore was *competent to stand trial.* During the subsequent proceeding to set a trial date, the issue of a formal competency hearing was discussed. In response to the *prosecution's* inquiry as to whether a competency hearing was necessary, Mr. Moore's lawyer stated: "[a]ctually, we just need to get the Court's ruling." (Tr. 10) Again, the *prosecuting* attorney asked if they needed to set a date for a competency hearing. The court responded by stating that "we may not need a hearing, just a ruling." Mr. Moore's lawyer agreed. Defense counsel further

stated that it had "no objection if the court were to make a written ruling". (Tr. 11) Accordingly, after repeated reassurance by defense counsel that a ruling would suffice, the court did not schedule a hearing.

By Order issued on 23 June 1993, the Court ruled "based upon the totality of evidence", that Mr. Moore was capable of understanding and participating in his defense, and that he was capable of understanding the nature and consequences of the crime. In recognition of the statutory protections afforded by *W.Va. Code,* 27–6A–1 [1983], the court further ordered that:

> ... [I]f the State of West Virginia or the Defendant or his attorney request a hearing on the findings above set forth, the Prosecuting Attorney or Defendant's counsel shall notify this Court within a reasonable period of time after receipt of a copy of these findings and request a hearing on such findings to be held in accordance with Chapter 27, Article 6A, Section 2 of the West Virginia Code.

The defense made no subsequent request for a competency hearing.[3]

■ Although the statute states that the court "may" order an examination, we have previously held that the trial court has no discretion to deny a request for mental examination of a defendant if an *appropriate* request has been made. Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure,* Vol. II, at 131 (2nd ed. 1993), citing *State v. Flint,* 171 W.Va. 676, 301 S.E.2d 765 (1983); *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199 (1983); *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980); *State v. Pauley,* 166 W.Va. 636, 276 S.E.2d 792 (1981).

However, even after the results of the psychological exam had been received, and the Court issued a competency ruling, defense counsel did not challenge the results or request a psychiatric evaluation. Furthermore, the psychologist's report did not indicate that another examination by a psychia-

trist was needed. Thus, the court had no reason to doubt the competency of Mr. Moore.[4]

■ In Syl. pt. 4, *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980) we held that:

> When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation. To the extent that *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), differs from this rule, it is overruled.

We find that in this case defense counsel simply never pursued the trial court's offer to provide a psychiatric evaluation.

■ In *State v. Myers,* 167 W.Va. 663, 280 S.E.2d 299 (1981) we held that when there is some initial showing that the defendant may be mentally incompetent the court should order a psychiatric evaluation. However, a trial court may conclude that there is no competency problem based upon "observations, various *pro se* motions and letters filed by the defendant." *Cleckley, supra,* Vol. II at 131, citing *State v. Dye,* 171 W.Va. 361, 298 S.E.2d 898 (1982). Likewise, reliance by the court on the conclusions of a psychological exam can lead a judge reasonably to conclude a defendant is competent to stand trial. The trial court apparently relied upon the assertions of defense counsel and the findings of the psychologist and concluded that there was no initial showing that Mr. Moore was incompetent. Accordingly, the court found that there was no need to order a psychiatric examination *sua sponte.*

We do not find it to be reversible error when the defense counsel repeatedly turns down opportunities to request a psychiatrist and waives his client's right to a full competency hearing. In *State v. Baker,* 169 W.Va. 357, 287 S.E.2d 497 (1982), we held that when an initial defense lawyer requests a competency examination of his client under *W.Va.*

---

**3.** The prosecution also made no further inquiry about a competency hearing.

**4.** In fact, even Mr. Moore's lawyer made limited representations with respect to his client's competency. At the arraignment hearing on 17 Sep-

tember 1993, the defense lawyer stated "I believe that he knows and understands what he is accused of and can answer any questions that the Court has at this present time."

*Code,* 27–6A–1(a), but the lawyer replacing him as defense counsel fails to have the psychiatric examination conducted, it is not reversible error. Specifically, we stated that "the trial judge did not have the responsibility to insure the psychiatric examination was conducted because it was not brought to his attention." *Baker,* 169 W.Va. at 357, 287 S.E.2d at 500. In this case, Mr. Moore's lawyer was apparently satisfied with the psychological examination, thus no psychiatric evaluation was requested.[5]

Mr. Moore argues he was prejudiced as a result of the trial judge's failure to order a psychiatric evaluation. Mr. Moore's lawyer had notice of the findings and opinions of the psychologist who examined his client. He did not request a psychiatric evaluation, nor did he request a competency hearing. Instead, Mr. Moore's lawyer chose to present a defense of incapacity due to intoxication and mild retardation, apparently having decided that a psychiatric examination was not needed. Mr. Moore was not therefore prejudiced by the trial court's failure to order a psychiatric evaluation in compliance with *W.Va. Code,* 27–6A–1 [1983]. This is especially significant in light of defense counsel's admission of his client's competency during arraignment. That finding is adequately supported by the record.

■ In the interests of future judicial economy, whenever a trial court is confronted with a Motion for Mental Status Evaluation and orders an examination believing that the defendant may be incompetent or insane, the court should order that said examination shall be conducted by "one or more psychiatrists, or a psychologist *and* a psychiatrist", in accordance with *W.Va.Code,* 27–6A–1 [1983]. [Emphasis added.]

## II.

Mr. Moore also asserts that the trial court erred by failing to suppress his confession because he was not fully informed of his *Miranda* rights. Detective Bradley testified at trial that he read the following warnings from the Parkersburg Police Department rights sheet to Mr. Moore:

> You have the right to remain silent and not make a statement to me or any other police officer. You have the right to refuse to answer any questions and be represented by an attorney before any questions are asked. If you want an attorney but are unable to afford one, an attorney will be appointed for you at no cost. *You must understand that any statement you do make can be used as evidence in a court of law.* You have the right to stop answering questions at any time during this statement. [Emphasis added.]

Detective Bradley further testified that he was unaware of Mr. Moore's retardation.

Mr. Moore was orally read his *Miranda* warnings, and concurrently shown a written copy. Detective Bradley pointed to each line on the waiver form as he read it out loud, and asked Mr. Moore if he understood his rights. Mr. Moore subsequently confirmed that he understood and signed the form waiving those rights.

■ The defense claims that the failure specifically to state that any statement Mr. Moore made could be used *against* him negated his ability to make a knowing and intelligent waiver of those rights.[6] It is not a constitutional requirement that *Miranda* warnings be given in the exact form stated in that decision. Furthermore, *Miranda* itself stated that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by the defendant." [Emphasis added.] *Miranda v.*

---

**5.** One problem with criminal law is that it is becoming more and more like medicine in that numerous unnecessary (and expensive) procedures are done simply for defensive purposes. Mindlessly filing a sheaf of stock motions does *not* win criminal cases; indeed, such tactics actually distract judges from what a defendant really needs. Twenty stock motions will probably be dismissed or responded to be rote; three incisive requests that actually help a defendant get an acquittal will be thoughtfully evaluated. The facts of this case indicate that defense counsel was tactically correct as there appears to be no evidence of either incompetency or insanity.

**6.** There are no allegations of police coercion.

*Arizona,* 384 U.S. 436, 476, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966).

■ The inquiry is simply whether the warnings reasonably communicate to the suspect his rights as required by *Miranda. See U.S. v. Tillman,* 963 F.2d 137, 141 (6th Cir. 1992); *California v. Prysock,* 453 U.S. 355, 360–62, 101 S.Ct. 2806, 2810, 69 L.Ed.2d 696 (1966); *Duckworth v. Eagan,* 492 U.S. 195, 202–3, 109 S.Ct. 2875, 2879–80, 106 L.Ed.2d 166 (1989). In this case, the defendant was adequately advised of his rights despite the omission of the word "against." The psychologist concluded that: "In spite of Mr. Moore's lower intellectual abilities and limited reading skills, he demonstrated adequate memory and understanding of both *court proceedings and the charges against him.* The preceding suggests that Mr. Moore can be considered competent to stand trial and actively participate in his own defense."

■ In *State v. Adkins,* 170 W.Va. 46, 53, 289 S.E.2d 720, 727 (1982) we stated that: "[i]t is the general rule that the intelligence of a person making a confession is but one factor to be considered in determining whether a waiver of rights was voluntary." We find that (1) the essence of the rights conveyed in *Miranda* were presented to Mr. Moore both orally and in writing; (2) the psychologists concluded that Mr. Moore displayed adequate understanding of court proceedings and the nature of the charges against him; (3) Mr. Moore had a eighth grade education; and, (4) Mr. Moore had past experience as a criminal defendant indicating that he was no stranger to the law.[7] Accordingly, we conclude that despite being mildly retarded, Mr. Moore made a knowing and intelligent waiver of his right to remain silent. Therefore, the trial court did not err by failing to exclude Mr. Moore's confession on that basis.

### III.

■ Mr. Moore also asserts that his confession was not voluntary because he was never informed of the charges against him and he was intoxicated. The testimony of Mr. Moore's mother supports his claim that he was intoxicated; however, Detective Bradley had no recollection of any intoxication. In Syl. Pt. 3 of *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978) we held that: "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." In *State v. Goff,* 169 W.Va. 778, 289 S.E.2d 473 (1982).

■ The totality of the circumstances in this case shows that the defendant was informed as to the nature of the charge against him and he did knowingly and intelligently waive his *Miranda* rights. Mr. Moore, wearing unzipped pants, was found approximately 150 feet from the house of the victims just minutes after the crime occurred. Despite mild retardation and intoxication, he still had the presence of mind to give the officer who initially detained him on the scene a fictitious name. His underwear, shirt, shoes, and wallet were found inside the victims' home. He was taken into custody from the reported crime scene and interviewed approximately two hours later.

The facts of this case can be distinguished from *State v. Goff,* 169 W.Va. 778, 289 S.E.2d 473 (1982) involving a retarded defendant who was not informed of the charges against him. In *Goff,* the defendant's past involvement as a police informant gave rise to concerns that he may have believed he was being asked to assist in solving a crime, as opposed to understanding that he was actually a suspect under investigation for committing a crime. The Court in *Goff* ruled that under the totality of the circumstances, the confession was involuntary. Although it appears that the police did not expressly tell Mr. Moore the nature of the charges against him, under the circumstances there could be no confusion about what Mr. Moore was being charged with.

■ Mr. Moore also argues that his combined impairments left him highly susceptible to suggestion. However, Mr. Moore's refusal to allow his confession to be recorded after his oral confession to Detective Bradley negates the inference that Mr. Moore was unusually susceptible to manipulation or influ-

---

7. Mr. Moore had previously pleaded guilty to a  separate second degree sexual offense.

ence by the police. The evidence in this case supports the conclusion that Mr. Moore had the capacity to understand the meaning and effect of his confession, and voluntarily waived his rights.

■ Retardation or intoxication at the time of interrogation does not necessarily invalidate a subsequent confession.

In determining the voluntariness of a confession, the trial court must assess the totality of all the surrounding circumstances. No one factor is determinative.

*See* Syl. pt. 7, in part, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). We find that under the totality of the circumstances, the trial court's decision to admit Mr. Moore's confession was neither "plainly wrong" nor "clearly against the weight of the evidence". Syl. Pt. 3, *Vance, supra.*

## IV.

■ Mr. Moore also asserts that the trial court erred by failing to grant his motion for judgment of acquittal on each charge in the indictment. In count one of the indictment, Mr. Moore was charged with sexual abuse in the first degree, which requires proof of "sexual contact". *W.Va.Code,* 61–8B–1(6) [1986], states in pertinent part that:

> 'Sexual contact' means any intentional touching, *either directly or through clothing, of the anus* or any part of the sex organs of another person, . . . where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

Mr. Moore claims that the State failed to prove beyond a reasonable doubt that sexual contact occurred between Mr. Moore and Robbie Noe.

We find the appellant's contention that the State did not prove all elements of the crime to be without merit. A close scrutiny of the record reveals that there was more than enough evidence to support this conviction. There is direct evidence that Mr. Moore walked naked into the room where the chil-

dren were sleeping, climbed into the bed in which both boys were sleeping, laid on top of ten year old Robbie who was sleeping face down, and began moving back and forth.

Robbie testified that someone was on top of him "pushing against . . . [his] butt", which felt "bad". Robbie's brother Justin testified that he woke up and saw Mr. Moore on top of his brother "holding him on his arms where he couldn't get away." Justin also testified he later saw Mr. Moore walking down the stairs naked, with an erection. Mr. Moore argues that actual anal contact was never proven. We find that the jury could reasonably infer from the circumstances that sexual contact, as defined by the Code, occurred. Therefore, we hold that the trial court did not err by failing to acquit Mr. Moore on the charge of sexual abuse in the first degree.

In count two of the indictment, Mr. Moore was charged with breaking and entering with the specific intent to commit a sexual offense within. Mr. Moore asserts that without his confession, there was insufficient evidence to support a determination that Mr. Moore entered with the requisite intent. However, in view of our ruling upholding the admissibility of Mr. Moore's confession, this assignment of error is without merit.

For the foregoing reasons, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.