STATE OF WEST VIRGINIA

*v.*

LAWRENCE FRANKLIN ARNOLD, *alias* WARREN T. LINCOLN

(No. 13527)

Decided December 9, 1975.

*Richard H. Brumbaugh* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, for defendant in error.

FLOWERS, JUSTICE:

This is an appeal by Lawrence Franklin Arnold, alias Warren T. Lincoln, from his conviction of grand larceny in the Circuit Court of Roane County. The indictment charged that the defendant feloniously stole a 1969 Chrysler automobile from Discount Motor Sales of Spencer, Inc. He was sentenced to an indeterminate term of one to fifteen years in the state penitentiary.

The principal questions presented for decision involve: (1) Whether the circuit court abused its discretion in denying the defendant's motion for a pre-trial psychiatric examination; (2) whether the defendant's motion for a mistrial should have been granted based upon testimony of a collateral crime; and (3) whether the evidence sufficiently proved the element of intent.

Prior to trial, counsel for the defendant made a written motion for a mental examination. The motion was predicated upon the ground that the defendant had informed counsel of his recent discharge from a mental institution in Staunton, Virginia, and his prior confinement in twenty-six different mental hospitals on twenty-seven separate occasions. When the motion came for argument before the court, the defendant interjected the following:

"On the second application you have before you, that came as a surprise to me. I didn't know

this was being done until the other day. I have no intention of filing any sanity pleas within this court whatsoever. My motion will be nolo contendere. That will be my plea; at a later date after getting my health back I will file for habeas corpus in another county or court."[1]

Defense counsel advised the court that he was unable to offer any further evidence in support of his motion. When the defendant was offered the opportunity to make a statement, he said:

"It is apparent to me that between you, the defense counsel, and the Prosecuting Attorney is quite a ball, so whatever you do, you just do it— don't make any difference to me one way or the other. I am ready for the penitentiary any time you want to send me there."

\* \* \*

"THE COURT: Is it your request that the motion for mental examination be withdrawn?

A. I don't give a damn what you do ... contempt of court don't mean anything. Doing time one place is just like another.

THE COURT: That is very candid of you. The motion for examination of the mental condition of the defendant will be overruled."

Upon the refusal of the defendant to enter a plea, the circuit court entered a plea of not guilty and the matter proceeded to trial.

The evidence indicated that the defendant, using the alias of Warren T. Lincoln, went to the sales lot of Discount Motor Sales on May 23, 1973, at about 11:00 a.m. and discussed the purchase of an automobile for his wife

---

[1]In its context within the record, the defendant's statement about "getting my health back" was a reference to his physical health. A previous inquiry by the court revealed that the defendant had been hospitalized for "a heart condition and lung operation." No direct reference to a mental hospital nor mental illness was ever made by the defendant.

with Allen Roth Harold, a salesman. He identified himself as being employed by the State Department of Highways and being "established with the Trader's Bank." After selecting a 1969 Chrysler which Harold had agreed to sell for $1,350.00, the defendant left saying he wanted to phone his wife before making the purchase.

Around noon he returned to the lot and asked to take the car to show his wife. No written or oral sales agreement was made, and the defendant agreed to return the car by 9:00 a.m. the following day. He left a 1973 Pontiac automobile at the sales lot, instructing the owner to take special care of the car since "all my things are in it."

The 1969 Chrysler was never returned to Discount Motors and the next morning the State Police were notified. The car was subsequently located by police in Rutland, Vermont, and was disposed of there for $900.00. The defendant was apprehended in Ohio.

On this evidence, the state rested. The defendant presented no evidence and the jury returned a verdict of guilty of grand larceny.

I

Counsel for the defendant contends that the trial court abused its discretion, and as a consequence violated the defendant's right to due process, by denying the motion for a mental examination.

An accused person, although he may have been sane at the time of the acts charged, cannot be tried, sentenced or punished while mentally incapacitated. *State v. Harrison*, 36 W. Va. 729, 15 S.E. 982 (1892). To be competent to stand trial a defendant must exhibit a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402 (1960). Due process of law requires that adequate state procedures exist to make certain that an accused is not

convicted while legally incompetent. *Pate v. Robinson,* 383 U.S. 375, 378 (1966); *Martin v. Estelle,* 492 F.2d 1120 (5th Cir. 1974).

Whether, however, a formal inquiry as to the mental capacity or competency of the defendant should be ordered is a question to be resolved within the sound discretion of the trial court. *State v. Harrison, supra;* 21 Am. Jur. 2d *Criminal Law* §62, p. 143; Annot., 32 A.L.R. 2d 434, 456 *et seq.*

At the time Arnold was indicted and convicted, *W. Va. Code,* 62-3-9, as amended, and *W. Va. Code,* 27-6-7, as amended, provided the statutory basis by which trial courts might require the examination and commitment of individuals charged with crimes who were believed to be mentally incompetent or incapacitated. *W. Va. Code,* 62-3-9, as amended, (which has since been repealed by Chapter 66, Acts of the Legislature, Regular Session, 1974) provided:

> "Whenever any person charged with or convict-
> ed of a crime, or acquitted thereof because of his
> mental condition, is thought to be mentally ill or
> mentally defective, the judge of the court of rec-
> ord in which he was so charged, convicted, or
> acquitted, may on his own motion inquire into
> the mental condition of such person."

In order to require a mental examination under the provisions of that statute, the factors relevant to the defendant's mental condition must be sufficient to establish, in the mind of the trial judge, reasonable cause to believe the defendant to be mentally ill or mentally defective. *See, Drope v. Missouri,* 420 U.S. 162 (1975); *State v. Harrison, supra.*

There are no "fixed or immutable signs" which indicate the need for inquiry into the defendant's mental competency, and resolution of the issue requires consideration of a wide range of factors. *Drope v. Missouri, supra.* Evidence of irrational behavior, a history of mental illness or behavioral abnormalities, previous confinement for mental disturbance, demeanor before the trial

judge, psychiatric and lay testimony bearing on the issue of competency, and documented proof of mental disturbance are all factors which a trial judge may consider in the proper exercise of his discretion. *Drope v. Missouri, supra; Pate v. Robinson, supra.*

In *Drope,* the United States Supreme Court stated that a lawyer's representation concerning the competence of his client is unquestionably a factor which should be considered. In the case before this Court, counsel dutifully and properly related to the trial court the defendant's assertion to him that he had been hospitalized in twenty-six different locations on twenty-seven different occasions. Had there been any corroboration of what was apparently the fruit of a casual discussion between counsel and accused, the result below as well as here may have been different. Other than this assertion of counsel, the only other relevant factor available to the trial court was the demeanor of the defendant.

The trial judge had occasion on October 3rd at arraignment, on October 9th at the filing of motions, and on October 11th at the argument of motions to observe the defendant prior to trial on October 15th and evaluate his rational as well as factual understanding of the proceedings against him and the sufficiency of his ability to consult with his lawyer and assist with his own defense. The transcript made of each of the noted appearances provides this Court an opportunity to review the care exercised by the trial judge in ruling on counsel's motion. While other trial courts might have exercised their discretion differently in these circumstances, we cannot conclude upon a review of the record that a denial of the motion was an abuse of discretion.

## II

The defendant's second assignment of error relates to whether the trial court erred in refusing to grant a mistrial because of the allegedly prejudicial testimony of Trooper James Bias. Trooper Bias testified that as part of his investigation, he checked the ownership of the

1973 Pontiac left at the lot by the defendant. His testimony was heard by the jury as follows:

"A. On the day Mr. Harold contacted me I went to his car lot and looked at a '73 vehicle that was left there by the defendant who had taken a '69 Chrysler from his lot. I checked the vehicle over. I wrote the serial number and plate number. It was a New York registration. I sent a message to New York by teletype to ascertain why the vehicle was here.

MR. BRUMBAUGH: We object to any statement in regard to this other vehicle, not responsive to the question and being irrelevant to the crime charged in this indictment.

THE COURT: Objection will be overruled. The actions of this witness taken in response to a complaint are admissible. You may proceed.

WITNESS: I checked with the State of New York by teletype and a reply came back this vehicle was stolen.

MR. BRUMBAUGH: Objection and move to strike the question.

THE COURT: Sustained. The jury is instructed to disregard what the reply was.

MR. McCARTY: This was a teletype reply.

THE COURT: I understand, the objection is sustained."

Counsel for the defendant contends that, while the court instructed the jury to disregard the testimony, it was so highly prejudicial that a mistrial was warranted.

This Court has held that evidence of collateral crimes and charges is admissible against an accused when it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (5) the identity of the person charged with commission of the crime on trial." *State v. Thomas,*

W. Va., 203 S.E.2d 445, 455 (1974). The status of the 1973 Pontiac left at the lot by the defendant was material to the state's case and upon proper proof could have been admitted. *State v. Wassick*, W. Va., 191 S.E.2d 283 (1972); *State v. Johnson*, 105 W. Va. 598, 143 S.E. 352 (1928).

Even if the evidence were inadmissible, the prompt action of the trial court precluded prejudicial error. Ordinarily when objections to certain evidence by a witness are sustained by the trial court during the trial, and the jury is instructed to disregard the matter, it will not constitute reversible error. *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966).

## III

Finally, counsel for the defendant contends that the evidence did not sufficiently establish the element of intent. Larceny is the unlawful and felonious stealing, taking and the carrying away of personalty of another with felonious intent to deprive the owner permanently of his property. *State v. Pietranton*, 137 W. Va. 477, 72 S.E.2d 617 (1952). The record reveals that the defendant, by the use of an alias, sought permission to take a car to show his wife. He left behind another vehicle with a New York license plate. The defendant promised to return the vehicle by at least 9:00 a.m. the next morning. The vehicle was never returned and was subsequently discovered in Vermont. There was sufficient evidence upon the record to permit the jury to find that the defendant intended to permanently deprive the owner of his property.

For reasons stated in this opinion, the judgment of the Circuit Court of Roane County is affirmed.

*Affirmed.*