294 S.E.2d 134

**STATE of West Virginia ex rel. William Thomas KESSICK**

v.

**Donald BORDENKIRCHER, Supt., WVP.**

**No. 15506.**

Supreme Court of Appeals of West Virginia.

July 1, 1982.

---

**332**

Jackson, Kelly, Holt & O'Farrell, Pamela Dawn Tarr, Charleston, for petitioner.

Chauncey H. Browning, Jr., Atty. Gen., and Laurie J. Garrigan, Asst. Atty. Gen., Charleston, for respondent.

PER CURIAM:

Petitioner William Thomas Kessick, by writ of habeas corpus, challenges an order of the Circuit Court of Cabell County, West Virginia, entered 3 February 1981, which accepted his plea of guilty to the charge of unlawfully wounding his four-month-old daughter. We find that the lower court did not conduct a proper hearing on the issue of the petitioner's competency to enter a guilty plea in the face of sufficient facts to alert the court that petitioner might not be competent to waive his right to a jury trial. Consequently, we award the writ and direct that the petitioner be given a new trial.

The petitioner was arrested on two magistrate warrants on 12 November 1980 as a result of an argument with his wife during which he allegedly assaulted her and maliciously wounded his four-month-old daughter. Over the course of the next thirty days, while he was in the Cabell County Jail, the petitioner attempted suicide on four occasions (once by an overdose of Benadryl, twice by hanging himself with a sheet, and once by slitting his wrists). On 8 December 1980, he was transferred to the Huntington State Hospital for psychiatric and psychological evaluation pursuant to an order entered by the circuit court.

The purpose of the evaluation was to determine whether the petitioner was competent to stand trial and whether he was criminally responsible for the crimes with which he had been charged. The petitioner remained at the hospital until 12 January 1981. On that date he returned to the Cabell County Jail to answer an indictment for the assault on his wife and the malicious wounding of his daughter. The indictment had been returned by the Cabell County Grand Jury while he was undergoing evaluation at Huntington State Hospital.

During his confinement at the hospital, the petitioner was evaluated by a psychologist, a social worker, and a psychiatrist. The psychologist reported that the petitioner was not then able to assist his lawyer or to stand trial and needed further treatment. The social worker set forth the petitioner's sorrowful social history. The psy-

chiatrist indicated that the petitioner was competent to stand trial and to assist his attorney in his defense but that he needed further treatment. He warned that under the stress of the trial the petitioner could possibly "decompensate" and become incompetent to stand trial. Each of the evaluations included comments on the petitioner's longstanding and continuing depression, his suicidal tendencies, and his propensity for hearing voices.

The evaluations were received by the circuit court on 9 January 1981, but were not filed by the court until 13 April 1981. In the interim, a plea bargain was struck by which the charges stemming from the assault were dropped and the malicious wounding charge was reduced to unlawful wounding in return for the petitioner's plea. The agreement was accepted by the trial court, and the petitioner was sentenced to a term of one to five years in the West Virginia State Penitentiary. The circuit court did not refer to the evaluations when the plea was entered or during the sentencing hearing.

Furthermore, when the guilty plea was entered on 3 February 1981, the petitioner was under the influence of Valium and Sinequan.[1] Although the petitioner can read and write, only with his attorney's assistance was the guilty plea questionnaire completed. At the sentencing hearing on 27 February 1981, the petitioner's counsel (an attorney substituting for his counsel of record) noted that the evaluation indicated that the petitioner needed further treatment and recommended psychiatric treatment in lieu of further incarceration.

The sentencing order, filed 5 March 1981, recommended that the petitioner receive psychiatric treatment at the Huttonsville Correctional Center, but on 9 March 1981 the petitioner was transferred directly to the State Penitentiary where he has been ever since. Ten weeks *after* the sentencing hearing, the circuit court entered an order acknowledging receipt of the evalua-

tion that he had received four months before, including findings that the petitioner was competent to stand trial and that he was criminally responsible for his actions. Thus, the circuit court failed to take any action based on the evaluation until after the petitioner had pled guilty and had been sentenced.

 Although there were sufficient facts to have alerted the trial court to conduct a hearing on the competency of the petitioner to enter a guilty plea, or on his competency to stand trial, there was no such hearing—*even though* the court had initially concluded that the petitioner should be evaluated to determine his competency to stand trial and the degree, if any, of his criminal responsibility. *W.Va. Code*, 27–6A–1 [1977] and 27–6A–2 [1979] specify the procedures used to determine the competency of a defendant to stand trial. "Generally, the statutes provide for psychiatric or psychological examination of a criminal defendant who is of questionable competence, and for a hearing at which the defendant's competency is determined." *State v. Cheshire*, 170 W.Va. 217, 292 S.E.2d 628 (1982). Syllabus point 1 of *Cheshire, supra,* quoting Syllabus point 2, *State v. Arnold*, 159 W.Va. 158, 219 S.E.2d 922 (1975) and Syllabus point 4, *State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980) states: "To be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." Syllabus point 2 of *State v. Cheshire, supra,* states: "The test for mental competency to stand trial and the test for mental competency to plead guilty are the same." Thus, the standard set forth in Syllabus point one of *Cheshire* is equally applicable to the determination of competency to plead guilty, and the procedures set forth in these statutes are "also applicable to a determination of a

---

1. According to the report of the social worker:
 He is still very afraid of almost everyone, is depressed and easily upset. However, he no longer speaks of killing himself since being placed on medication. It is felt that he is still potentially suicidal if not medicated and dealt with carefully.

defendant's competence to enter a guilty plea." *State v. Cheshire, supra,* at 630.

Accordingly, for the reasons set forth above, the writ of habeas corpus heretofore issued by this Court, is made absolute, and it is ordered that the petitioner's guilty plea to be held for naught and that the petitioner be returned to the Circuit Court of Cabell County for further proceedings consistent with this opinion.

Writ, as moulded, issued.