336 S.E.2d 541

**STATE of West Virginia**

v.

**Bobby Gene SWIGER, Jr.**

**No. 16539.**

Supreme Court of Appeals of West Virginia.

Nov. 1, 1985.

Pamela J. Eliopulos and John E. Shank, Asst. Pros. Attys., Wood County Courthouse, Parkersburg, for appellant.

Charles R. Carten, Donna H. Peters-Humphreys, Charleston, for appellee.

McHUGH, Justice:

This case is before this Court upon the appeal of Bobby Gene Swiger, Jr., from the final order of the Circuit Court of Wood County, West Virginia. The appellant was convicted in 1984 in circuit court of sexual assault in the first degree, *W.Va. Code,* 61–8B–3 [1976], and assault during the commission of or attempt to commit a felony, *W.Va. Code,* 61–2–10 [1931].[1] Pursuant to those convictions, the appellant was sentenced to two concurrent penitentiary terms.[2]

The appellant contended that he was not guilty "by reason of insanity" of the offenses charged in the indictment. He further contended that he was not competent to stand trial. Upon granting the appeal in this case, we granted the appellant's motion for leave to move to reverse. *W.Va. Code,* 58–5–25 [1931]. In March, 1985, we ordered that the appellant be transferred from the Wood County Correctional Facility to Spencer Hospital (Roane County) pending appeal. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. Assisting in the preparation of the appellant's brief was counsel for the West Virginia Advocates for the Developmentally Disabled.

## I

### THE FACTS

On June 2, 1982, the appellant, 19 years old, attended a party at the home of Howard and Darlene Hutson in Wood County. Several adults and children were present. Late that evening, while the children were sleeping in various rooms of the house,

---

1. *W.Va.Code,* 61–8B–3 [1976], provides in part:
 "(a) A person is guilty of sexual assault in the first degree when: ... (3) He, being fourteen years old or more, engages in sexual intercourse with another person who is incapable of consent because he is less than eleven years old."
 *W.Va.Code,* 61–2–10 [1931], provides in part:
 "If any person in the commission of, or attempt to commit a felony, unlawfully shoot, stab, cut or wound another person, he shall be guilty of a felony...."

2. The appellant received a sentence of not less than ten nor more than twenty years upon his conviction of sexual assault in the first degree. He received a sentence of not less than two nor more than ten years upon his conviction of assault during the commission of or attempt to commit a felony.

Darlene Hutson discovered the appellant in the kitchen area pulling up his pants. The appellant walked past Mrs. Hutson and out of the house. Mrs. Hutson then saw her five-year-old niece, L.H., lying seriously injured upon the kitchen floor. L.H. was taken to a hospital where it was determined that she had been sexually assaulted. She had also received injuries to her neck from choking or strangulation.

Following his arrest and preliminary hearing, the appellant in July, 1982 was indicted in Wood County upon charges of (1) sexual assault in the first degree, (2) sexual abuse in the first degree, (3) assault during the commission of a felony, (4) assault during the attempt to commit a felony and (5) attempted murder. The appellant entered a plea of not guilty "by reason of insanity." He also brought into question his competency to stand trial.

## II

## EXAMINATIONS AND HOSPITALIZATIONS

In June and July, 1982, the appellant was examined in Wood County by B.M. Hirani, a psychiatrist, and Alan D. Sturdevant, a psychologist. *W. Va. Code*, 27–6A–1(a) [1977]. Although Hirani and Sturdevant were unable to reach an opinion as to whether the appellant had the capacity to be criminally responsible for the alleged assault upon L.H., they concluded that the appellant suffered from mental retardation and that he was incompetent to stand trial. The appellant was then transferred to Spencer Hospital for further examination. *W. Va. Code*, 27–6A–1(b) [1977].

In August 1982 at Spencer, the appellant was examined by John R. Atkinson, Jr., a psychologist, who concluded that the appellant suffered from no condition "which would diminish [the appellant's] responsibility" for the alleged assault upon L.H. However, Atkinson also concluded that the appellant suffered from mental retardation

and was incompetent to stand trial. In addition, as reflected by medical reports completed in August, 1982 and March, 1983, Danis Soylu, a medical doctor at Spencer Hospital, confirmed the appellant's mental retardation and incompetency to stand trial.[3]

Subsequent to the appellant's hospitalization at Spencer, the circuit court found that the appellant was incompetent to stand trial and dismissed the July, 1982 indictment. Thereafter, the circuit court committed the appellant to Weston Hospital (Lewis County) with the authority to transfer the appellant to the Greenbrier Center medical facility (Greenbrier County).

Arthur N. Ward, a staff physician at Weston Hospital, indicated that the appellant suffered from mental retardation.

In May, 1983, the appellant was transferred to the Greenbrier Center, and, in October, 1983, the circuit court was informed that the staff at Greenbrier had reached a consensus that the appellant's mental condition had improved and that he was competent to stand trial. As indicated in the record, the opinions of the Greenbrier staff were reflected in the written report of Alonzo L. Brown, a staff psychologist at Greenbrier. However, although Brown wrote that he considered the appellant competent to stand trial, Brown had indicated previously that a psychiatric evaluation would be necessary to "support or deny the Greenbrier Center staff opinion" that the appellant was competent to stand trial.

Finally, in early November, 1983 the appellant was again examined by Dr. Hirani in Wood County. As indicated above, Dr. Hirani had examined the appellant in 1982. Dr. Hirani again found the appellant incompetent to stand trial. His November, 1983 report stated as follows:

The patient was found to be fairly cooperative, respectful, compliant and he followed simple orders quite well. How-

---

**3.** As indicated above, the appellant was examined in August, 1982 by Atkinson and Dr. Soylu at Spencer Hospital. The appellant was then returned to Wood County where, in September, 1982, the Circuit Court ordered that the appel-

lant be transferred back to Spencer Hospital for a six-month improvement period. In March, 1983, Dr. Soylu confirmed the appellant's mental retardation and incompetency to stand trial.

ever, his speech was marked by 'don't know' responses, and it was not possible to gather any kind of meaningful information. It was the impression of the examiner that the patient was not putting on an act and that he was incapable of giving any definite and meaningful information.

. . . .

When he was questioned about the charges, he had no idea at all. Also, he had no idea at all about the various officials that are present in a courtroom and their functions.

. . . .

Competency assessment revealed that he had total disability in several areas which would render him quite incompetent to stand trial.

. . . .

He is at present unable to consult with his attorney and to assist his attorney in the preparation of his defense with any degree of understanding of the charges against him.

## III

## THE CONVICTIONS

On November 23, 1983, the circuit court conducted a hearing to determine whether the appellant was competent to stand trial. The witnesses who testified were Dr. Hirani and Alonzo L. Brown. At the conclusion of the hearing, the circuit court held that the appellant was competent to stand trial. In particular, the circuit court held that (1) the appellant could recall some of the events which took place with regard to the alleged assault upon L.H., (2) the appellant had a "rudimentary grasp" of courtroom procedure, and (3) the Greenbrier Center staff believed that the appellant was competent to stand trial.

The appellant was then indicted for the same offenses concerning L.H. with which

he had been charged in the July, 1982 indictment. He again entered a plea of not guilty "by reason of insanity," and trial began on June 13, 1984. On June 15, 1984, the jury returned a verdict of guilty of sexual assault in the first degree and guilty of assault during the commission of or attempt to commit a felony.

## IV

## DISCUSSION

The question before this Court concerns the appellant's competency to stand trial. The appellant contends that he was incompetent.

The appellant asserts, in particular, that his counsel was ineffective in not submitting during the November, 1983 competency hearing certain evidence of the appellant's incompetency to stand trial. The appellant further asserts that, in any event, the evidence which was submitted during that hearing clearly established the appellant's incompetency to stand trial.

In *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), we set forth the standard for determining the validity of claims of ineffective assistance of counsel. Syllabus point 19 of *Thomas* states:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.[4]

---

4. The above syllabus point of *Thomas* has been cited by this Court numerous times. This year alone, it has been cited in the following West Virginia cases: *State v. Manns*, 174 W.Va. 793, 329 S.E.2d 865, 873, n. 11 (1985); syl. pt. 1, *State v. Blevins*, 174 W.Va. 636, 328 S.E.2d 510 (1985); syl. pt. 1, *Tucker v. Holland*, 174 W.Va. 409, 327 S.E.2d 388 (1985).

A recent, important case concerning standards for determining the validity of claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104

Two witnesses, Dr. Hirani (a psychiatrist) and Alonzo L. Brown (a psychologist), testified at the appellant's November, 1983 competency hearing. Those witnesses, called by the State, were not cross-examined by defense counsel. Nor did defense counsel call witnesses upon the appellant's behalf (in spite of evidence in the record before this Court that other witnesses could have testified that the appellant was incompetent to stand trial). At the conclusion of the hearing, the circuit court determined from the testimony that the appellant could recall some of the events which took place with regard to the alleged assault upon L.H. and that the appellant had a "rudimentary grasp" of courtroom procedure. Furthermore, the circuit court concluded that the Greenbrier Center staff, which included Alonzo L. Brown, believed that the appellant was competent to stand trial. Thus, the circuit court held that the appellant was competent to stand trial.

Asserting that his counsel was ineffective, the appellant cites *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776 (1983). In *Bias*, this Court found ineffective assistance of counsel, where the defendant's attorney failed to submit certain evidence that the defendant was insane at the time the defendant allegedly committed the offense. The defendant was convicted of murder of the first degree, without a recommendation of mercy. Reversing the conviction, we held in syllabus point five:

> When fourteen physicians, psychiatrists, and psychologists were unanimous in their opinions that a defendant was mentally ill, and an overwhelming majority of the experts found him to be psychotic; and defense counsel introduced the testimony of only two psychologists and one physician and none of the voluminous medical records from institutions in which the defendant had been treated; and ignored other evidence of defendant's psychotic condition at the time he committed an offense, counsel was ineffective.

█ Nevertheless, we are of the opinion that the appellant's assertion of ineffective assistance of counsel is without merit. *Annot.*, 17 A.L.R.4th 575 (1982). Dr. Hirani examined the appellant in 1982 and 1983. He was one of the first and one of the last of the various medical experts to examine the appellant prior to the competency hearing. Although called as a witness by the State, Dr. Hirani consistently maintained that the appellant was incompetent to stand trial. The testimony of other medical witnesses supportive of the appellant's theory of incompetency, that defense counsel could have submitted at the hearing, would have been, as the record demonstrates, somewhat cumulative of the Hirani testimony.[5] Moreover, as indicated below, the testimony of Alonzo L. Brown, to the effect that the appellant was competent to stand trial, was, on its face, less than certain.

> S.Ct. 3562, 82 L.Ed.2d 864 (1984). The Supreme Court of the United States in *Strickland* stated:
>> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>> ....
>> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>> ....
>> When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.
>
> 466 U.S. at 687–688, 104 S.Ct. at 2064, 2065, 80 L.Ed.2d at 692, 693.

5. *See State v. Church,* 168 W.Va. 408, 284 S.E.2d 897 (1981), defense counsel's decision not to request "further neurological examination of the defendant" did not constitute ineffective assistance of counsel, in view of previous mental examinations of the defendant contained in the record.

In any event, we find that any shortcomings of defense counsel with regard to the appellant's competency hearing constituted harmless error under *Thomas, supra,* because, as discussed below, the circuit court, upon the evidence actually submitted at the competency hearing, committed error in finding that the appellant was competent to stand trial. In other words, in view of the clear evidence at the hearing of the appellant's incompetency to stand trial, the appellant suffered no prejudice from alleged ineffective assistance of counsel.[6]

Turning to the merits of the appellant's competency hearing, we note that the Supreme Court of the United States, in *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), stated that "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." 420 U.S. at 171, 95 S.Ct. at 903, 43 L.Ed.2d at 112–13. *See also Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A similar principle appears in West Virginia, as expressed in decisions of this Court and by statute.

■ In syllabus point one of *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), *overruled upon other grounds* in syl. pt. 4, *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980), we held: "An accused person, although he may have been sane at the time of the acts charged, cannot be tried, sentenced or punished while mentally incapacitated." *See also State ·v. Cheshire,* 170 W.Va. 217, 292 S.E.2d 628, 630 (1982); *Demastus, supra,* 165 W.Va. at 582, 270 S.E.2d at 656; *State*

*v. Milam,* 159 W.Va. 691, 697, 226 S.E.2d 433, 438 (1976).

■ In particular, we held in syllabus point 2 of *Arnold* that "[t]o be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him." *See also State v. Cheshire,* 173 W.Va. 123, 313 S.E.2d 61, 63 (1984); syl. pt. 1, *State ex rel. Kessick v. Bordenkircher,* 170 W.Va. 331, 294 S.E.2d 134 (1982); *State v. Cheshire, supra,* 292 S.E.2d at 630; *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851, 857 (1980); syl. pt. 1, *State v. Milam, supra.*[7]

We again emphasize that, in this case, we are concerned with the appellant's competency to stand trial, rather than with the appellant's capacity to be criminally responsible for the alleged assault upon L.H. We distinguished competency from criminal responsibility in *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811 (1981), in which we stated: "A clear distinction must be drawn between insanity which precludes responsibility for crime, and insanity which precludes a trial." 167 W.Va. at 234, 280 S.E.2d at 813.

With respect to the determination of competency to stand trial, *W.Va. Code,* 27–6A–1 (1983), provides that, following certain mental examinations of a criminal defendant:

[T]he court of record shall make a finding on the issue of whether the defendant is competent for trial. A finding of incompetence for the trial shall require proof by a preponderance of the evidence. Notice of such findings shall be sent to the prosecuting attorney, the defendant and his counsel. If the court of record orders or if the defendant or his counsel on his behalf within a reasonable

---

6. In *Strickland v. Washington, supra,* the Supreme Court of the United States stated: "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors [of· defense counsel] than one *with overwhelming record support.*" 466 U.S. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. (emphasis added)

7. In *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811, 814 (1981), we stated: "Obviously, insanity that prevents a defendant from understanding the nature and object of the proceedings against him and cooperating with counsel in preparing a proper defense must bar a trial in order to protect the accused."

time requests a hearing on such findings, a hearing in accordance with section two of this article shall be held by the court of record....

*W.Va. Code,* 27–6A–2 [1979], provides, in part:

(a) At a hearing to determine a defendant's competency to stand trial, the defendant shall be present and he shall have the right to be represented by counsel and introduce evidence and cross-examine witnesses. The defendant shall be afforded timely and adequate notice of the issues of the hearing and shall have access to a summary of the medical evidence to be presented by the State. The defendant shall have the right to an examination by an independent expert of his choice and testimony from such expert as a medical witness on his behalf. All rights generally afforded a defendant in criminal proceedings shall be afforded to a defendant in such competency proceedings.

(b) At the termination of such hearing the court of record shall make a finding of fact upon a preponderance of the evidence as to the individual's competency to stand trial based on whether or not the individual is capable of participating substantially in his defense and understanding the nature and consequences of a criminal trial.

In this case, the appellant was found competent to stand trial, and he was subsequently convicted under the indictment.

At the appellant's November, 1983 competency hearing, Alonzo L. Brown, a psychologist from the Greenbrier Center, indicated that the appellant was competent to stand trial. However, his testimony was less than certain. When the standard for determining competency found in *State v. Arnold, supra,* was read to Brown, i.e., "[t]o be competent to stand trial, a defendant must exhibit a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational, as well as factual, understanding of the proceedings against him," Brown stated that the appellant was *not* competent to stand trial. On the other

hand, Brown testified that the appellant had made a "great deal of progress" while at the Greenbrier Center, that the appellant was capable of understanding the charges against him and that he could function "in the courtroom or in the work force."

Furthermore, during the competency hearing a Greenbrier Center "psychological evaluation" of the appellant was admitted into evidence. That evaluation, signed by Brown, stated that "[a] psychiatric evaluation should precede [the appellant's] oncoming court evaluation to support or deny the Greenbrier Center staff opinion that Bobby is competent to stand trial."

The record indicates that subsequent to Brown's psychological report, the appellant was, in fact, examined by a psychiatrist— Dr. B. M. Hirani.

Dr. Hirani, who had examined the appellant in 1982, examined the appellant again in November, 1983, prior to the competency hearing. Dr. Hirani testified:

During the course of my evaluations, I think that I must have seen plenty of cases and this was one of the real cases in which a person has no idea whatsoever about what was the nature of the charges against him, what were the possible penalties, what are the possible defenses against him, what is the possible role of the various officials present in the Courtroom, what is the possible role of the defense attorney, and what is his duty or role in terms of relating to and helping the defense lawyer. In fact, in most of the areas that are really very pertinent, I found him incompetent.

As stated above, no other witnesses testified at the competency hearing.

■ Upon a careful examination of the record, and particularly in view of the evidence submitted during the appellant's November, 1983 competency hearing, this Court is of the opinion that the circuit court committed error in finding that the appellant was competent to stand trial. *See* syl. pt. 3, *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851 (1980). The transcript of the hearing clearly establishes by a preponderance of the evidence the

appellant's incompetency. *W. Va. Code*, 27–6A–1 [1983]; *W. Va. Code*, 27–6A–2 [1979].

In particular, we hold that a circuit court committed reversible error in finding a criminal defendant mentally competent to stand trial, where the sole witnesses who testified at the hearing to determine the defendant's competency were a psychologist and a psychiatrist, and the record clearly revealed that, (1) the testimony of the psychologist that the defendant was competent to stand trial was equivocal and subject to a previous indication by that psychologist that a psychiatric evaluation should be conducted to "support or deny"

the psychologist's opinion concerning the defendant's competency, and (2) the psychiatrist, who examined the defendant upon two occasions, consistently maintained that the defendant was incompetent to stand trial. *W. Va. Code*, 27–6A–1 [1983]; *W. Va. Code*, 27–6A–2 [1979]. The statement during oral argument in this case made by the prosecutor, that the appellant appeared to be competent during the various proceedings before the circuit court, finds no support in the record.

■■■■ Accordingly, the convictions of the appellant under the indictment are hereby set aside.[8]

**8.** After the alleged assault, L.H. was taken to a hospital where it was determined that she had been sexually assaulted and had received injuries to her neck from choking or strangulation. During her examination at the hospital, John E. Montgomery, a medical doctor, asked L.H. what had happened. In reply, L.H. stated that "Bobby" had attacked her.

That statement by L.H. was revealed at trial to the jury through the testimony of Dr. Montgomery. The circuit court had previously determined, in chambers, that the statement was admissible as part of the *res gestae:*

I am going to rule that, in view of the fact that the child, in her condition, certainly had no time to concoct a story—the whole theory of res gestae is that it is so immediate from the point of view of the individual, that they don't have time to think what they are going to say, and I am going to rule that the time element here was so close and the child's condition was such that the reason for the rule of res gestae has been met. Consequently, the testimony for Dr. Montgomery on what the child said to him would be admissible.

The appellant contends that the circuit court, in so ruling, committed error. We disagree. The record indicates that, at the time the statement to Dr. Montgomery was made, L.H. was still under the influence of the alleged sexual assault and choking incident. She had been in a semi-conscious state while being taken to the hospital.

In syllabus point 1 of *State v. Coram*, 116 W.Va. 492, 182 S.E. 83 (1935), this Court stated: "Statements by a participant in a transaction are admissible as part of the *res gestae,* if spontaneous and made while under the influence of the transaction itself." In *Coram,* the statements of a five-year-old girl made to her mother 20 minutes after an alleged attempted rape were held to be part of the *res gestae* where the child's "emotions still fomented from the sexual embrace ...," and the statements were "spontaneous and voiced the transaction." 116 W.Va. at 494, 182 S.E. at 84–85.

As we stated more recently in syllabus point 2 of *State v. Young,* 166 W.Va. 309, 273 S.E.2d 592 (1980):

An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*See also* syl. pt. 1, *State v. Ray,* 171 W.Va. 383, 298 S.E.2d 921 (1982).

Finally, during the appellant's trial, John R. Atkinson, Jr., a psychologist, testified from hospital records that the appellant's family, while visiting the appellant at Spencer Hospital, taped open a door while leaving the premises. When the taped door was discovered by hospital personnel immediately thereafter, the appellant made a signal from a window, and his family "left in a hurry." The taping incident was described by Atkinson in an effort to explain that the appellant knew right from wrong. (Atkinson testified in general terms, with regard to the taping incident, concerning the appellant's capacity to know right from wrong. He did not dwell upon the inference that the appellant's family was attempting to aid the appellant in leaving the hospital without permission.)

The numerous medical reports contained in the record in this case are virtually unanimous in rendering questionable the appellant's competency to stand trial. Ronald Pearse, a psychologist who examined the appellant after the appellant's conviction in circuit court, indicated that in the absence of supervision or support, the appellant should not be "just merely released" upon bail pending appeal. Pending the outcome of this appeal, we ordered that the appellant be transferred from the Wood County Correctional Facility to Spencer Hospital.

His convictions under the indictment having been set aside, however, the appellant is entitled to a new trial, which would, of course, necessitate a determination by the circuit court of whether the appellant, at this time, is competent to stand trial. That determination, as before, must be made pursuant to *W.Va.Code*, 27–6A–1 [1983], and *W.Va.Code*, 27–6A–2 [1979].

If the circuit court finds that the appellant is presently competent to stand trial, then, as *W.Va.Code*, 27–6A–2(b) [1979], provides, the circuit court "shall forthwith proceed with the criminal proceedings."

On the other hand, the circuit court may find that the appellant is presently incompetent to stand trial. If so, the following provisions of *W.Va.Code*, 27–6A–2 [1979], are relevant:

If the individual is found incompetent to stand trial, the court of record shall upon the evidence make further findings as to whether or not there is a substantial likelihood that the individual will attain competency within the next ensuing six months, and if the court of record so finds, the individual may be committed to a mental health facility for an improvement period not to exceed six months.... Within ten days of the termination of such period, the court of record shall ascertain by hearing in accordance with subsection (a) of this section [*W.Va.Code*, 27–6A–2(a)] whether or not the individual has attained competency to stand trial.

....

If the individual is a defendant in a felony case and is found initially to be incompetent to stand trial with no substantial likelihood of obtaining competency, or if after such improvement period the individual is found to be incompetent to stand trial, then the director of health shall institute against the individual civil commitment proceedings pursuant to article five of this chapter and the criminal charges shall be dismissed. If the individual is committed pursuant to article five of this chapter, then the director of health shall cause the individual's competency to stand trial to be reviewed every six months during the period of his civil commitment, and shall report his findings to the court of record after every such review....[9]

The appellant contends that Atkinson's testimony concerning the incident constituted hearsay and was prejudicial to the appellant. The record in this case demonstrates, however, that the taping incident was an event which occurred at Spencer Hospital while the appellant was a patient there, an event which was described in medical records kept in the ordinary course of business at Spencer Hospital.

Upon the record before us, we find no prejudicial error with regard to the Atkinson testimony concerning the taping incident. *See State v. Bias, supra,* 171 W.Va. at 692, n. 4, 301 S.E.2d at 782, n. 4 (verified hospital records kept in the ordinary course of business, are admissible in evidence.)

All other issues raised by the appellant are without merit.

**9.** The Supreme Court of the United States, in *Jackson v. Indiana, supra,* stated:

We hold ... that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

406 U.S. at 738, 92 S.Ct. at 1858, 32 L.Ed.2d at 451.

In *State ex rel. Smith v. Scott, supra,* 167 W.Va. at 234, 280 S.E.2d at 813, and *State ex rel. Walton v. Casey,* 163 W.Va. 208, 214, 258 S.E.2d 114, 117 (1979), this Court indicated that civil commitment proceedings, under *W.Va.Code,*

*See also W.Va.Code,* 27–6A–5 [1974].

 Thus, although the convictions of the appellant under the indictment are set aside, the appellant will not be simply released into the public at large. His present competency to stand trial is to be determined. In that regard, we note that in his November, 1983 report, Dr. Hirani, who presented some of the strongest testimony in this case, stated: "[T]here is no substantial liklihood [sic] of the patient improving his competency status, that is becoming competent in the future." If that is the case, then the civil commitment of the appellant may again be appropriate. As indicated above, where a defendant in a felony case, found by a court of record to be incompetent to stand trial, is civilly committed to a mental health facility pursuant to *W.Va.Code,* 27–6A–2(d) [1979], and *W.Va. Code,* 27–5–1 *et seq.* [1979], the defendant's competency to stand trial shall, pursuant to *W.Va.Code,* 27–6A–2(d) [1979], thereafter be periodically reviewed.[10]

Of course, the competency of a criminal defendant to stand trial "is essentially a factual question to be decided on a case by case basis...." *State v. Ferguson,* 26 Ariz.App. 285, 286, 547 P.2d 1085, 1086 (1976). We note, therefore, that the circumstances relating to this appellant would somewhat limit the application of this opinion to future cases.

Upon all of the above, therefore, we reverse the final order of the Circuit Court of Wood county and remand this case to that court for proceedings consistent with the principles of this opinion, including a determination, pursuant to *W.Va.Code,* 27–6A–1 [1983], and *W.Va.Code,* 27–6A–2 [1979], of whether the appellant is competent to stand trial.

Reversed and remanded.

---

27–5–1 *et seq.* [1979], may be appropriate with regard to a criminal defendant, where it is obvious that the defendant lacked the capacity to be *criminally responsible* for the crime charged.

**10.** A number of medical experts examined the appellant with regard to his competency to stand trial and his capacity to be criminally responsible for the alleged assault upon L.H. Several of those experts testified, and they or others may give testimony in the future concerning the appellant.

Accordingly, it should be noted that Rule 704 of the West Virginia Rules of Evidence was amended on October 16, 1985. Former Rule 704 provided as follows:

Rule 704. Opinion on Ultimate Issue. (a) *Generally.*—Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

(b) *Limitation in Criminal Cases.*—No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Rule 704, as amended, provides: "Rule 704. Opinion on Ultimate Issue. Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."