379 S.E.2d 156

**STATE of West Virginia**

v.

**John Allen JENKINS.**

**No. 18443.**

Supreme Court of Appeals of West Virginia.

March 15, 1989.

Daniel J. Guida, Public Defender Corp., Moundsville, for John Allen Jenkins.

Charles G. Brown, III, Atty. Gen., Charleston, for the State.

PER CURIAM:

This case is before the Court upon the appeal of John Allen Jenkins from an order of the Circuit Court of Wetzel County, which, following a hearing on the matter, affirmed a prior order that found the appellant competent to stand trial for first degree sexual assault. The appellant subsequently plead guilty to the lesser offense of sexual abuse. He was sentenced to a suspended term of five years, during which time appellant is to remain on conditional probation in a group home.

The appellant contends that the trial judge erred when he determined that, by a preponderance of the evidence, the appellant was competent to stand trial. We affirm.

Appellant, John Allen Jenkins, 21–years–old and mildly to moderately retarded, was indicted in 1985 for the first degree sexual

assault of a five-year-old girl. A factual question developed concerning the appellant's ability to stand trial due to his mental retardation.

The State had the appellant examined by several experts: Dr. Jose Mendoza, and psychologists, Dr. Barbara Rush and Dr. Samuel Goots.

Dr. Mendoza concluded that based on his psychiatric evaluation, the appellant was retarded; however, he understood the charges against him and would be able to assist his counsel at trial.

Dr. Goots gave an opinion similar to that of Dr. Mendoza. Dr. Goots' opinion was based on a twenty-day evaluation of the appellant at Weston State Hospital.[1] The evaluation included the completion of six psychological tests. Dr. Goots concluded:

He is somewhat limited in his intellectual abilities, but this limitation was not felt to be of sufficient severity to preclude his relevant participation in cooperating in his own defense. Mr. Jenkins was aware of the nature of the charge against him and could describe the specific act of sexual assault with which he is accused. Additionally, he has some understanding of the possible nature of penalties should he be found guilty of the current offense. His quality of relating to his attorney may be somewhat impaired due to his low intellectual levels; however, Mr. Jenkins is pliable, cooperative and is capable of understanding instructions and questions if these are stated in simple words. He is generally aware of court procedure and is able to adequately define the roles of principals in the trial process. It was felt that he would be able to provide his attorney with information relevant to his own defense.

Psychologist Rush conducted one test, the Weschler Adult Intelligence Test, where the appellant scored a full scale IQ of 65, in the mild mental retardation range. Appellant has a tenth grade education and is rudimentarily literate. Due to a "miscommunication" in a brief interview prior to the test and the appellant's mental retardation, Dr. Rush concluded:

Mr. Jenkins has a very basic understanding of the difference between right and wrong and is aware that it is wrong to hurt someone else. He does not seem capable, however, of comprehending the full consequences of his behavior nor of making complex social judgments. Mental retardation is not a condition that always precludes criminal responsibility. However, in this case, Mr. Jenkins' intellectual limitations include serious social development deficiencies which have never been adequately remediated. He should not be held criminally responsible for his behavior.[2]

By order dated January 15, 1986, the trial court found the appellant competent to stand trial. The appellant moved for an independent psychological evaluation and a competency hearing pursuant to *W.Va. Code*, 27–6A–2 [1979]. Both motions were granted.

At the hearing, defense counsel did not introduce the additional, in depth, independent mental examination performed by psychiatrist, Dr. Patricia Williams. Instead, the appellant testified at length and Dr. Rush was called as a defense witness.

While Dr. Rush's initial finding contained in her report went to criminal responsibility rather than competency to stand trial, she testified at the hearing that the appellant was not competent to stand trial, even

1. Dr. Goots' evaluation was the result of a State's motion for further examination pursuant to *W.Va.Code*, 27–6A–1(b) [1983]. The order granting the motion, dated December 6, 1985, reflects that the defendant did not oppose the motion.

2. Both psychologist Rush and psychiatrist Mendoza asked the appellant, "who filed the charge"? The appellant responded that his older sister had filed the charge and he then contin-

ued at length that he never hurt his older sister and never discussed the facts surrounding the incident for which he was charged. The older sister filed the charge, on behalf of her niece.

Since neither expert received information concerning the charges, both were unaware at the time of the interview that the sexual assault concerned a minor. Dr. Mendoza later viewed the appellant's actions as deception. Dr. Rush viewed it as "miscommunication."

though during cross-examination he was able to answer correctly most questions concerning the role of the judge, jury, and the attorneys. Further, unlike her prior opinion, which was, in part, based upon the "miscommunication," after listening to the appellant testify, Dr. Rush further admitted that the appellant understood the charge against him and would be able to relay to his counsel the facts surrounding the incident for which he was indicted.

Drs. Goots and Mendoza also testified and reiterated the conclusions in their previous reports.[3]

By order dated April 16, 1986, the circuit court affirmed the prior ruling. In doing so the court found that in consideration of:

> psychiatric and psychological examinations of Dr. Mendoza, Dr. Rush and Dr. Goots and excluding the report of Dr. Williams, ... psychological testimony of the witnesses and the testimony of the defendant, [and] his demeanor while on the witness stand, the Court does find from a preponderance of the evidence in this case, that the defendant is competent to stand trial, defendant has the ability to assist his counsel in preparation of a defense and does understand the nature of the proceedings against him. The Court is very mindful from evidence adduced herein that the defendant's mental capacity is very limited, that he is mildly retarded, that is not the criteria in determining the matter of legal competency to stand trial.

Appellant, relying on syllabus point 4 of *State v. Swiger,* 175 W.Va. 578, 336 S.E.2d 541 (1985), contends that the trial judge erred when he found the appellant was competent to stand trial.

■ In this type of competency hearing, the standard of appellate review is whether the finding is supported by a preponderance of the evidence. The trial judge serves as the finder of fact. *W.Va. Code,* 27–6A–2(b) [1979]; *State ex rel. Williams v. Narick,* 164 W.Va. 632, 641, 264 S.E.2d 851, 857 (1980).

■ In making such a finding, the trial judge must consider the factors recently restated in syllabus point 6 of *State v. Barrow,* 178 W.Va. 406, 359 S.E.2d 844 (1987):

> 'No person may be subjected to trial on a criminal charge when, by virtue of mental incapacity, the person is unable to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceedings against him.' Syllabus Point 1, *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976).

In *Swiger, supra,* numerous experts found the appellant incompetent to stand trial, and one of the State's experts equivocally found the appellant competent. We reversed the trial court's factual finding since it was not based on a preponderance of the evidence.

*Jackson* concerned the requirement that a *psychiatric* interview be tape-recorded and an in-camera hearing conducted to determine the admissibility in the criminal trial of inculpatory statements made at the competency evaluation. *Jackson* did not speak to psychological tests and evaluations used solely for a competency proceeding which do not contain inculpatory statements. Since the appellant did not initially oppose the Goots' evaluation, and appellant was able to thoroughly cross-examine the doctor concerning the four psychological tests and records he reviewed in rendering his opinion, we need not address whether *Jackson* applies, as any error which arguably may have occurred was harmless. *See also State v. Ayers,* 179 W.Va. 365, 369 S.E.2d 22, 26, n. 4 (1988); *Maxey v. Bordenkircher,* 175 W.Va. 49, 330 S.E.2d 859 (1985).

---

**3.** At the competency hearing, the appellant objected to the testimony of Dr. Goots. The appellant had previously not opposed the State's motion for Goots' twenty-day evaluation. Goots performed four psychological tests over a twenty-day period, reviewed all records, and conducted a clinical interview. The interview revealed no inculpatory statements. Instead, it appears from the doctor's report, which was provided to counsel, that the interview was conducted for the purpose of examining the appellant's speech patterns and coherency. Appellant contended at the hearing, and on appeal, that since the psychiatrist did not tape record the clinical interview, he could not effectively cross-examine him, and therefore, appellant's sixth amendment right to effective assistance of counsel was violated pursuant to syl. pt. 2, *State v. Jackson,* 171 W.Va. 329, 298 S.E.2d 866 (1982).

**654**

■ In sharp contrast to *Swiger*, one psychologist, based on one I.Q. test and a brief interview, found the appellant not only incompetent to stand trial, but also not criminally responsible for the charge due to low intelligence and poor social development. She later testified that appellant could relay the facts surrounding the alleged assault to his attorney, and could answer correctly most questions concerning the judicial process.

A psychiatrist and psychologist who performed a series of tests unequivocally testified that the appellant was able to assist his counsel and understood the charges against him. Further, as noted in the order, the judge also had the opportunity to observe the appellant's demeanor during his lengthy testimony. Based upon the evidence before us, we hold that the trial judge did not err when he made the factual determination that, by a preponderance of the evidence, although mentally retarded, the appellant was competent to stand trial under the *Barrow* standard.

Affirmed.